# IN THE COURT OF APPEALS OF THE STATE OF IDAHO

## Docket No. 47418

| | |
|---|---|
| STATE OF IDAHO, | ) |
| | ) **Filed: June 2, 2021** |
| Plaintiff-Respondent, | ) |
| | ) **Melanie Gagnepain, Clerk** |
| v. | ) |
| | ) **THIS IS AN UNPUBLISHED** |
| ZACHARY POLK NELSON, | ) **OPINION AND SHALL NOT** |
| | ) **BE CITED AS AUTHORITY** |
| Defendant-Appellant. | ) |
| | ) |

Appeal from the District Court of the Fourth Judicial District, State of Idaho, Ada County. Hon. Deborah A. Bail; Hon. Patrick J. Miller, District Judges.[1]

Judgment of conviction for trafficking in methamphetamine, <u>vacated</u>; order denying motion to suppress, <u>reversed</u>; and <u>case remanded</u>.

Eric D. Fredericksen, State Appellate Public Defender; Justin M. Curtis, Deputy Appellate Public Defender, Boise, for appellant.

Hon. Lawrence G. Wasden, Attorney General; Kale D. Gans, Deputy Attorney General, Boise, for respondent.

_____

BRAILSFORD, Judge

Zackary Polk Nelson appeals from his judgment of conviction for trafficking in methamphetamine. Nelson asserts the district court erred in denying his motion to suppress evidence obtained following an investigatory detention. We conclude that reasonable suspicion did not support Nelson's detention and reverse the court's denial of his suppression motion.

---

[1] The Honorable Deborah A. Bail entered the order denying the motion to suppress at issue in this case. The Honorable Patrick J. Miller presided over the subsequent jury trial and entered the judgment of conviction.

# I.

## FACTUAL AND PROCEDURAL BACKGROUND

The State charged Nelson with trafficking in methamphetamine, Idaho Code § 37-2732B(a)(4)(A),[2] after Officer Esparza detained Nelson outside a hotel in Meridian; a drug dog alerted on his truck; and officers found over 36 grams of methamphetamine, a digital scale with drug residue, several clear plastic baggies in a purple Crown Royal bag, and more digital scales in a duffle bag in the truck. Nelson moved to suppress this evidence, arguing Officer Esparza did not have reasonable suspicion to detain Nelson.

The district court held a suppression hearing at which Officer Esparza was the only witness to testify. The video from Officer Esparza's body camera, which recorded his encounter with Nelson, was admitted in evidence. After the hearing, the court issued a written decision denying Nelson's motion. In its decision, the court found the following facts as they relate to this appeal:

> On December 28, 2018, the Meridian Police Department received a call for service at [a hotel] from hotel management. The hotel advised that they had received complaints from guests about sex[3] and drug activity involving a woman and several men in room 148 in the hotel. The police were provided with the license plate numbers of two vehicles associated with the room, a Ford Explorer and a Chevy truck. Several officers were dispatched along with one with a drug detection dog immediately after the call was received. Officer Brandon Esparza was one of the first officers who responded. Officer Esparza quickly found the Chevy truck parked in front of the hotel. He took a picture of it as two men exited the hotel and approached the truck. Officer Esparza introduced himself. Initially, he was alone although other officers showed up shortly after his first contact with [Nelson]. [Nelson] approached the officer and shook his hand. Officer Esparza asked them if they were staying at the hotel. [Nelson] said that they were. Officer Esparza asked for ID and [Nelson] went towards the driver's door of the truck. [Nelson] explained that his wallet was inside. Officer Esparza noticed that [Nelson] was wearing a knife and asked him for it. [Nelson] was fiddling with his

---

[2]    The State also charged Nelson with frequenting a place where controlled substances were known to be located, a misdemeanor, I.C. § 37-2732(d). The jury, however, found Nelson not guilty of this charge.

[3]    We note the district court also refers in its written decision to this complaint as a complaint about "possible prostitution." An allegation of prostitution was mentioned in both the police report and during the preliminary hearing. Further, Nelson acknowledged this allegation in his memorandum in support of his motion to dismiss. The State, however, never charged Nelson with any crime related to prostitution.

pockets. Officer Esparza explained that they had a call and were checking on it. [Nelson] had a bulky, purple velvet Crown Royal bag which filled his entire hand. Officer Esparza asked [Nelson] to leave the bag while he was getting his identification out of the truck cab. [Nelson] placed the bag in the bed of the truck. [Nelson] got his identification. The officer continued to ask questions about who the men were staying with and got the names of both men.

After "about six minutes into the encounter," the drug dog alerted on Nelson's vehicle.

The district court ruled that Officer Esparza briefly detained Nelson. Although the court did not expressly rule that Officer Esparza had reasonable suspicion for this detention, it implicitly reached this conclusion, stating that "it was the kind of brief, investigative detention contemplated by *Terry*." Specifically, the court ruled:

> There was a brief, investigative detention of [Nelson]. No weapons were ever drawn. No voices were ever raised. No sirens or police lights were activated. Information gained as soon as Officer Esparza arrived allowed him to determine that he was talking to the men associated with the call about drug activity occurring out of Room 148. Officer Esparza never drew his weapon and never engaged in any kind of threatening behavior. Although the other officers showed up as the encounter continued, they did not display any weapons and did not even approach [Nelson]. Although Officer Esparza's vehicle was parked several feet behind another vehicle and was near [Nelson's] truck, it did not block the ability to exit although it would have been little more difficult to pull out. The entire *Terry*[4] stop lasted six minutes before it moved from a *Terry* stop to a probable cause arrest. This was a very brief investigative detention. Nothing was abnormally drawn out. No voices were raised nor were any weapons drawn. It was the kind of brief, investigative detention contemplated by *Terry*.[5]

After the district court denied Nelson's motion to suppress, Nelson proceeded to a jury trial, and a jury found him guilty of trafficking in methamphetamine. The court imposed a sentence of ten years with three years fixed. Nelson timely appeals the court's denial of his motion to suppress.

---

[4]     *Terry v Ohio*, 392 U.S. 1 (1968).

[5]     The issue Nelson raised in his motion to suppress was whether Officer Esparza had reasonable suspicion to detain Nelson. Neither the length of that detention nor the reasonableness of Officer's Esparza's actions in effectuating that detention (e.g., use of weapons, tone of voice, or use of lights or sirens) are relevant to that inquiry. *See State v. Stewart*, 145 Idaho 641, 644-47, 181 P.3d 1249, 1252-55 (Ct. App. 2008) (explaining considerations to determine whether investigative detention based on reasonable suspicion is conducted in manner reasonably related in scope to circumstances originally justifying detention)

## II.

## STANDARD OF REVIEW

The standard of review of a suppression motion is bifurcated. When a decision on a motion to suppress is challenged, we accept the trial court's findings of fact that are supported by substantial evidence, but we freely review the application of constitutional principles to the facts as found. *State v. Atkinson*, 128 Idaho 559, 561, 916 P.2d 1284, 1286 (Ct. App. 1996). At a suppression hearing, the power to assess the credibility of witnesses, resolve factual conflicts, weigh evidence, and draw factual inferences is vested in the trial court. *State v. Valdez-Molina*, 127 Idaho 102, 106, 897 P.2d 993, 997 (1995); *State v. Schevers*, 132 Idaho 786, 789, 979 P.2d 659, 662 (Ct. App. 1999). Determinations of reasonable suspicion are reviewed de novo. *State v. Bonner*, 167 Idaho 88, 93, 467 P.3d 452, 457 (2020).

## III.

## ANALYSIS

On appeal, Nelson argues Officer Esparza lacked reasonable suspicion to detain Nelson. The Fourth Amendment's reasonableness requirement applies to brief investigatory detentions. *State v. Bishop*, 146 Idaho 804, 811, 203 P.3d 1203, 1210 (2009). To determine whether such a seizure is reasonable, a court must first determine whether the officer's action was justified at its inception. *Id.* If an officer has a reasonable, articulable suspicion a person has committed or is about to commit a crime, a limited, investigatory detention is permissible. *Id.* "Reasonable suspicion must be based on specific, articulable facts and the rational inferences that can be drawn from those facts." *Id.* "The quantity and quality of information necessary to establish reasonable suspicion is less than that necessary to establish probable cause." *Id.* The reasonable suspicion standard, however, requires more than mere speculation or instinct on the part of the officer and must be evaluated on the totality of the circumstances at the time of detention. *State v. Ferreira*, 133 Idaho 474, 483, 988 P.2d 700, 709 (Ct. App. 1999); *see also Bishop*, 146 Idaho at 811, 203 P.3d at 1210 (requiring more than "hunch" or "inchoate and unparticularized suspicion"). An officer may draw reasonable inferences from the facts in his possession, and those inferences may be drawn from the officer's experience and law enforcement training. *State v. Montague*, 114 Idaho 319, 321, 756 P.2d 1083, 1085 (Ct. App. 1988). "Whether an officer possessed reasonable suspicion is evaluated based on the totality of circumstances known to the officer at or before the time of the stop." *Bishop*, 146 Idaho at 811, 203 P.3d at 1210.

In this case, Nelson argues that the call from "hotel management and staff" and his conduct, which Officer Esparza observed before detaining him, did not satisfy the reasonable suspicion standard. In response, the State argues "ample reasonable suspicion" justified Nelson's "brief detention." We agree with Nelson that Officer Esparza lacked reasonable suspicion to detain Nelson based on the totality of circumstances known to Officer Esparza at the time of the stop.

Exactly when Officer Esparza detained Nelson is a key fact necessary for determining whether Officer Esparza had reasonable suspicion for the detention. The district court ruled generally that Nelson "was briefly detained after it was determined that he was the driver of the truck associated with the room and he admitted staying there." While this ruling does not precisely indicate the point at which Officer Esparza detained Nelson, Officer Esparza testified-- and both the parties agree--that he detained Nelson when Officer Esparza told Nelson not to get in the truck:

Q. At that point, would you say that you had detained him so that you could further investigate what was going on?

A. Yeah, at that point once I had told him he couldn't get in his truck, you know, I had detained him and his vehicle was connected with a room that we were investigating, so at that point it was a detention, reasonable suspicion that he was involved with what was going on in the room.

The district court also did not include in its factual findings when Officer Esparza told Nelson he could not get in the truck. A review of the video from Officer Esparza's body camera, however, clearly shows that detention. Specifically, the video shows that while Officer Esparza is standing behind and taking pictures of a gray Chevy truck, Nelson and another individual exit the hotel's back door. Nelson shakes Officer Esparza's hand as Officer Esparza introduces himself. Officer Esparza inquires, "Where are you guys coming from?" to which Nelson responds, "The hotel." Further, Officer Esparza inquires, "You guys staying here?" to which Nelson responds, "Yeah." At that point, Nelson turns towards the truck as he retrieves keys from his pocket, and Officer Esparza states, "Hey don't go anywhere right now. Do you guys have I.D. with you? Stay out of your vehicle for me."

At that moment, Officer Esparza detained Nelson. At that time, Officer Esparza knew that Nelson appeared to be associated with the gray Chevy truck; he was carrying a "purple, like Crown Royal bag"; and he claimed to be staying at the hotel. Further, Officer Esparza knew

5

certain information received from the hotel employee who reported suspicious activity at the hotel. Regarding that information, Officer Esparza testified:

> Q.  Where did the service call come from, or who was the calling party?
>
> A.  The calling party was hotel management and staff calling about a room there at the [hotel]. They had complaints from the guests. The complaints were--it was Room 148. They were complaining that there were sexual noises coming from the room and drug activity coming from the room, and they had stated that there was a female in the room along with up to five males in the room.
>
> Q.  Okay. Did you have information about potential vehicles that were associated with that room?
>
> A.  Yeah. In the call it stated that there was a Ford Explorer and also a gray Chevy truck that had Canyon County plates on it.

Explaining the scope of his reasonable suspicion, Officer Esparza testified, "I had reasonable suspicion [Nelson] was involved with this room because of his involvement with the truck that was initially in the call." Further, Officer Esparza testified:

> Q.  And that whole suspicion was that you were investigating loud sex noises and potential vague drug activity?
>
> A.  Correct.

Based on the evidence presented at the suppression hearing, the State failed to meet its burden to prove Officer Esparza had reasonable suspicion to detain Nelson. In particular, the tip from the "hotel management and staff" lacked adequate indicia of reliability. For example, the hotel employee did not provide a description of anyone associated with Room 148, of any suspect's location other than the room generally, or of what the complaining "guests" personally observed or heard other than "loud sex noises." Further, Officer Esparza did not corroborate that the gray Chevy truck was indeed associated with Room 148. Rather, he testified only that the truck was a "potential" vehicle associated with Room 148. No evidence indicates how the truck was associated with Room 148. As Officer Esparza testified:

> Q.  You get a call that says this vehicle is associated with the room, but you don't know how that vehicle has been associated with the room, whether management has seen somebody leave that room and get in that vehicle, you're not sure how that connection is made; correct?
>
> A.  Correct.

Likewise, no evidence indicates Nelson was actually associated with Room 148. Officer Esparza never inquired whether Nelson had actually been in Room 148 before detaining him:

> Q.  And in the course of your interaction with [Nelson], he didn't indicate that he was in Room 148; correct?

6

A.    I don't believe he said that exact room.

. . . .

Q.    And at that time, you don't see [Nelson] walk out of any room.  You contact him outside the building; correct?

A.    Yes.  He exited the building, yes.

Q.    And your position was at the time you contact [Nelson], you wouldn't have been able to see which hotel room he came out of; correct?

A.    That's correct.

Based on the evidence presented, Officer Esparza lacked "specific, articulable facts" from which he could draw rational inferences to establish reasonable suspicion that Nelson had committed a crime while in Room 148.  *See Bishop*, 146 Idaho at 811, 203 P.3d at 1210 ("Reasonable suspicion must be based on specific, articulable facts and the rational inferences that can be drawn from those facts.").  Further, Officer Esparza conceded he did not have reasonable suspicion that Nelson was committing a crime when Officer Esparza detained Nelson:

Q.    So at the time you see [Nelson], you had no reasonable suspicion to believe that he was committing a crime at the time you detain[ed] him; correct?

A.    He wasn't committing any crimes at the time, but he was associated with a vehicle that was associated with a room that we were investigating.

Based on the totality of circumstances known to Officer Esparza at the time he detained Nelson, we hold Officer Esparza lacked reasonable suspicion for such detention.

## IV.

## CONCLUSION

The district court erred by concluding Officer Esparza had reasonable suspicion to conduct an investigative detention.  Accordingly, we reverse the court's ruling denying Nelson's motion to suppress, vacate the judgment of conviction, and remand for further proceedings consistent with this opinion.

Chief Judge HUSKEY and Judge LORELLO **CONCUR**.